IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MERLIN GODSTONE,<br><br>Plaintiff,<br>v.<br><br>DAVID PEDRO; CHRISTOPHER SCARR; D. BEVAN; BOBBY RABB; B. HILL; and SAMANTHA HOISINGTON,<br><br>Defendants. | Case No.: 2:24-cv-00853-AN<br><br>OPINION AND ORDER |

Plaintiff Merlin Godstone brings claims pursuant to 28 U.S.C. § 1983 for alleged violations of their First and Fourteenth Amendment rights by defendants, employees of Eastern Oregon Correctional Institution ("EOCI"). Defendants have filed a motion for summary judgment, which is fully briefed, and the Court finds that oral argument will not assist it in resolving this matter. *See* Local R. 7-1(d). The question before the Court is whether an adult-in-custody ("AIC") has a constitutional right to receive mail addressed using a prior name (rather than their current legal name) and whether that right is clearly established. For the reasons stated below, the Court concludes that such a right is not clearly established and, therefore, GRANTS defendants' motion based on qualified immunity.[1]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Materiality is determined with reference to the substantive law and material facts are those which might affect the

[1] Also pending before the Court is plaintiff's motion for extension of time, ECF 36. Plaintiff timely filed a response in opposition to defendants' motion for summary judgment, so the motion for extension of time is DENIED as moot.

outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) ("A mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party.").

The moving party has the initial burden of establishing the bases for its motion and identifying the portions of the record that demonstrate the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the non-moving party bears the burden of proof at trial, the moving party is only required to show an absence of evidence supporting the non-moving party's case. *Id.* at 325; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The court's role is not to "weigh the evidence" or make credibility determinations, which are tasks reserved for a jury. *Anderson*, 477 U.S. at 249. Instead, the court must "view the facts in the light most favorable to the nonmoving party" except to the extent that the nonmoving party's evidence is "'blatantly contradicted'" by the record. *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## BACKGROUND

The underlying facts are largely undisputed. At the time of all relevant events, plaintiff was incarcerated at EOCI. *See* Decl. of D. Bevan ("Bevan Decl."), ECF 34, at 4. Plaintiff was initially committed to the custody of EOCI under one name (their "committed name" or "court name"), but in 2023 they legally changed their name to Merlin Godstone. *See id.* at 5. EOCI staff provided the necessary letter of non-objection to assist with the name-change process. *See* Pl. Resp., ECF 38, at 24-26. In June 2023, plaintiff sent an AIC communication form ("kyte") asking how the name change would affect the handling of his mail; no response is in the record. *See id.* at 42. In October 2023, plaintiff sent a kyte noting that a magazine that had been addressed to their committed name had not been delivered; Bevan responded that "if your mail . . . do[es] not have your current court name and SID number on them then [it] will be returned to the sender. Please contact the company to get your information updated." *Id.* at 43. Over the following year, plaintiff sent numerous kytes to the defendants regarding the same issue, with each response informing

plaintiff that their name had been updated to Merlin Godstone in ODOC's systems and mail would need to be addressed to that name to reach them. *See, e.g.*, *id.* at 34, 38-39, 40, 44, 46-49, 50-52. The record shows that letters from plaintiff's sister, materials from the MoonShadow Coven of Topkea, and magazines went undelivered. *See id.* at 20-23, 32, 43.[2] Plaintiff grieved the issue to final resolution. *Id.* 6-14. On March 10, 2024, plaintiff filed a tort claim notice, which was denied. *Id.* at 16-18.

This lawsuit followed on May 28, 2024, and plaintiff filed the operative complaint on October 4, 2024. *See* Compl., ECF 1; Am. Compl., ECF 11. Defendants subsequently filed a motion for summary judgment, Defs. Mot., ECF 33, plaintiff responded in opposition, Pl. Resp., ECF 38, defendants filed a reply in support, Defs. Reply, ECF 39, and plaintiff filed a surreply, Pl. Surreply, ECF 40. Defendants' motion is now ripe for resolution.

## DISCUSSION

Defendants contend that they are entitled to summary judgment on the basis of qualified immunity, among other reasons. Because the Court concludes that qualified immunity applies, it declines to reach the question of whether plaintiff's rights were violated.[3]

[2] Plaintiff's complaint alleges that defendants interfered with court and legal mail, but there is no evidence in the record to support that assertion.

[3] Plaintiff's complaint asks that defendants "[r]eplace at [O]DOC's expense all rejected subscription issues and court cost for all legal matters. Deliver all rejected mail to me and provide me a list of all mail" that was returned to sender. Am. Compl. 8. In light of plaintiff's original demand of $100,000, ECF 1-1, and the retrospective nature of plaintiff's requested relief, the Court interprets the complaint as one for money damages. To the extent that plaintiff asks for prospective injunctive relief, such a claim is not barred by qualified immunity. *See Dickinson v. Medlen*, 936 F.2d 577 (9th Cir. 1991) (unpublished) ("Qualified immunity does not bar actions for declaratory or injunctive relief."). However, there is nothing in the record suggesting that defendants have retained rejected mail or a list thereof, such that they could comply with such an injunction. Nor is there any evidence that third parties are likely to continue sending plaintiff mail addressed solely to their committed name. The Court finds that, to the extent that plaintiff is requesting prospective injunctive relief, such a request is vague, unworkable, and speculative. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (holding that "[t]he speculative nature of [the plaintiff's] claim" precludes injunctive relief); *Clement v. California Dep't of Corr.*, 364 F.3d 1148, 1153 (9th Cir. 2004) (observing that injunctive relief must not be "intrusive and unworkable"); *Rodriguez v. Taqueria El Nuevo Perigo*, No. SACV 17-00960 AG (DFMx), 2018 WL 6061197, at *2 (C.D. Cal. Jan. 29, 2018) (denying injunctive relief where the request is "confusing" and "muddled").

The Supreme Court's doctrine of qualified immunity shields prison guards and other public officials from liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). District courts are "permitted to exercise their sound discretion in deciding" whether to determine first (1) whether a right was violated, or (2) whether a right is clearly established. *Id.* at 236. Here, the Court addresses only the clearly established prong because "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right" *id.* at 237, and the "briefing of constitutional questions is woefully inadequate" due to plaintiff's self-represented status, *id.* at 239.

Put simply, even if plaintiff could establish a genuine dispute of fact as to whether defendants' violated their constitutional rights, defendants are nonetheless entitled to summary judgment unless the conduct alleged was clearly established as a violation of federal law.[4] In the Ninth Circuit, "[a] constitutional right may be 'clearly established by controlling authority or a robust consensus of cases of persuasive authority.'" *DeFrancesco v. Robbins*, 136 F.4th 933, 939 (9th Cir. 2025) (quoting *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019)). "To overcome qualified immunity, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hughes*, 31 F.4th at 1223 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). However, the relevant authority does not need to be factually identical. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam).

[4] Generally, "with all affirmative defenses . . . the defendant bears the burden of proof." *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985)). However, the doctrine of qualified immunity is often exempted from otherwise generally applicable rules. *See Jamison v. McClendon*, 476 F. Supp. 3d 386, 405 (S.D. Miss. 2020) (discussing the doctrine's "sweeping procedural advantages"). With respect to burden, there appears to be some disagreement among Ninth Circuit panels as to whether defendant or plaintiff is responsible for establishing qualified immunity (or the lack thereof). *Compare Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017) (describing qualified immunity as "an affirmative defense that the [defendant] has the burden of pleading and proving" (citing *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)), *with Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) ("It is the plaintiff who 'bears the burden of showing that the rights allegedly violated were 'clearly established.'" (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)). Because self-represented litigants are given the benefit of the doubt, the Court places the burden on defendants, but the result would be the same either way.

Plaintiff asserts that defendant Bevan returned to the sender mail addressed to their committed name without notifying plaintiff, and argues that this conduct violates Oregon Administrative Rule ("OAR") 291-131, the First Amendment, and the Fourteenth Amendment. *See* Am. Compl., ECF 11; Pl. Resp.[5] The Court discusses each potential source of protectable rights in turn and considers whether the specific right asserted was clearly established at the time of the alleged violations.

**A. Rights under OAR 291-131-0025**

Violations of "state departmental regulations do not establish a federal *constitutional* violation." *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (collecting cases). Thus, although plaintiff makes a compelling case that defendants are misinterpreting and misapplying OAR 291-131-0025,[6] that cannot form the basis of a Section 1983 claim. *See Cornejo v. Cnty. of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007) ("[A] a claim for violation of state law is not cognizable under § 1983."); *Daniels v. Cleaver*, No. 2:18-cv-00285-MC, 2020 WL 2044621, at *6 (D. Or. Apr. 27, 2020) (holding that the defendant's failure to comply with ODOC mail regulations did not establish a violation of the plaintiff's constitutional rights). Instead, to prevail in federal court, plaintiff must identify clearly established rights under federal law.

**B. First Amendment Right to Receive Mail**

Plaintiff contends that defendants violated their First Amendment right to receive incoming mail by routinely rejecting mail addressed to only their committed name. "[R]estrictions on the delivery of [incoming] mail burden an inmate's ability to exercise [their] First Amendment rights." *Morrison v. Hall*, 261 F.3d 896, 906 (9th Cir. 2001). However, such a burden "is nonetheless 'valid if it is reasonably related

[5] Plaintiff also references the Eighth Amendment. However, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted). Because the Court has located no authority suggesting that even repeated interference with incoming mail rises to this standard, plaintiff's asserted rights are not clearly established under the Eighth Amendment.

[6] As plaintiff pointed out repeatedly in their communications and grievances, OAR 291-131-0010 defines "Court Name" as "the name provided in the first judgment in the custody cycle sentencing an inmate to the Department of Corrections" and there is no provision in the rules for changing an AIC's court name. Instead, OAR 291-131-0025(1)(a) provides that a new legal name may be appended under the court name. Therefore, incoming mail that is addressed using the AIC's SID number and the name under which the AIC was sentenced would appear to conform to OAR 291-131-0025.

to legitimate penological interests.'" *Hum. Rts. Def. Ctr., Inc. v. Uttecht*, 161 F.4th 1141, 1152 (9th Cir. 2025) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Thus, courts are called upon to evaluate prison policies and practices on a case-by-case basis to determine whether a defendant's censorship or rejection of incoming mail is unconstitutional based on the relevant factors. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 972 (9th Cir. 2017).

The Court has located two binding precedents that speak to issues similar to those in this case. First, in *Morrison v. Hall*, the Ninth Circuit rejected a facial challenge to OAR 291-131-0025(1)'s name-and-SID requirement because there was no evidence in the record indicating that the regulation was "being applied to deny inmates access to their mail even when the intended recipient may be clearly identified." 261 F.3d at 906. The court expressly reserved the question of whether rejecting incoming mail even where the intended recipient could be easily identified would violate the First Amendment. *Id.* Second, in *Malik v. Brown*, the Ninth Circuit considered a prison's policy of requiring AICs to use only their committed name on mail, rather than both a new, religious name and their committed name. 16 F.3d 330, 334 (9th Cir. 1994), *supplemented*, 65 F.3d 148 (9th Cir. 1995). The Court held that such a policy violated the free exercise clause of the First Amendment because "[u]sing both the religious and the committed name is a satisfactory alternative means for an inmate to freely exercise his religion." *Id.* The Court did not consider whether requiring use of a new name—alone or in tandem with an AIC's committed name—would violate the First Amendment. *Id.* Neither of these cases, nor any other binding authority the Court has located, clearly establish plaintiff's asserted First Amendment right to receive mail lacking their current, legal name.

Turning to persuasive authority, there are two unpublished Ninth Circuit cases that address similar issues, but they point in opposite directions. In *Kummerlowe v. Lewis*, an unpublished table decision, the Ninth Circuit held that plaintiff's allegations that the defendants returned to sender all incoming mail that lacked an AIC's prisoner identification number stated a First Amendment claim. 892 F.2d 1046 (9th Cir. 1989) (unpublished). Conversely, in *Riggins v. Clarke*, the Ninth Circuit upheld a Department of Corrections policy that rejected all incoming mail where an AIC's committed name and new name were not placed in the correct order. 403 F. App'x 292, 294 (9th Cir. 2010). Thus, there is some authority for

the proposition that a prison cannot adopt a blanket practice of rejecting incoming mail where the AIC could reasonably be located, but there is also authority that prisons may adopt rigid rules to facilitate the timely processing of mail. The tension between these cases, and the dearth of other relevant authority, indicates that there is not a robust consensus on this issue.

Thus, existing authority on this issue offers little guidance on the constitutionality of a prison rule requiring mail be addressed to an AIC's current legal name. Therefore, the Court concludes that, to the extent that plaintiff has a First Amendment right to receive mail addressed to their committed (rather than current legal) name, such a right is not clearly established.

**C. Fourteenth & Fifth Amendment Right to Due Process**

Plaintiff does not specify what specific conduct is asserted to have violated their rights to due process. AICs do generally enjoy "a Fourteenth Amendment due process liberty interest in receiving notice that [their] incoming mail is being withheld by prison authorities." *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999). However, there is not binding authority nor a robust consensus finding that this right extends to incoming mail that is returned based on noticeable defects such as misaddressing. *See, e.g.*, *Jeffries v. Snake River Corr. Inst.*, No. CIV. 05-1851-JO, 2008 WL 3200802, at *5 (D. Or. Aug. 4, 2008) ("Because SRCI's policy of not providing inmates with detailed notice every time a piece of mail is rejected for having a noticeable violation satisfies the *Turner* requirements, I conclude that it does not violate the First Amendment."), *aff'd*, 362 F. App'x 587 (9th Cir. 2010); *Sikorski v. Whorton*, 631 F. Supp. 2d 1327, 1348 (D. Nev. 2009) (concluding that the Fourteenth Amendment "does not require defendants to provide plaintiffs notice and an opportunity to appeal the decision" to return mail with noticeable external defects). Therefore, the Court concludes that a right to be informed of mail that is returned to sender due to issues with how it is addressed is not clearly established.

***

To overcome qualified immunity, plaintiff must show that the rights they assert were violated were clearly established in the case law at the time of the violation. The Court concludes that plaintiff cannot base a Section 1983 claim on violations of state law, and that the rights they assert under the First, Fifth,

Eighth, and Fourteenth Amendments are not clearly established. Therefore, defendants are protected by qualified immunity and entitled to summary judgment on that basis.

## CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment, ECF 33, is GRANTED. Plaintiff's motion for extension of time, ECF 36, is DENIED as moot. Judgment shall follow.

IT IS SO ORDERED.

DATED this 14th day of September, 2026.

Adrienne Nelson
United States District Judge